UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIA ELIZABETH HALLER,<br><br>   Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>   Defendant. | No. 1:22-cv-01050-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 17, 18)** |

### I.    Introduction

Plaintiff Lilia Elizabeth Haller ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs.[1]  Docs. 17, 18. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.

### II.    Factual and Procedural Background[2]

On June 28, 2019 Plaintiff applied for disability insurance benefits alleging disability as of June 28, 2019. The Commissioner denied the application initially on October 22, 2019, and on reconsideration on April 21, 2020. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on October 19, 2021. AR 12–39. On November 14, 2021 the ALJ issued an unfavorable decision. AR 63–84. The Appeals Council denied review on June 21, 2022. AR 1–6. On August 22, 2022, Plaintiff filed a complaint in this Court.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 15.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, and hence will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since alleged disability onset date of June 28, 2019.  AR 69.  At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis; bilateral carpal tunnel syndrome; obesity; depression; anxiety; and posttraumatic stress disorder.  AR 69.  The ALJ also found at step two that Plaintiff's hyperlipidemia and migraines were non-severe impairments, and that her chronic obstructive pulmonary disease (COPD) was not a medically determinable impairment.  AR 69.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 69–71.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) with the following limitations:  frequent to occasional climbing; frequent postural activities; frequent bilateral handling and fingering; environmental restrictions; simple, routine and repetitive tasks with no fast paced production requirements and occasional decision making; occasional interaction with co-workers and supervisors; no tandem tasks; no teamwork; and, no public interaction.  AR 71–77.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as an employment and claims aid (sedentary, skilled). AR 77. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: farm worker; industrial sweeper-cleaner; and floor waxer. AR 78. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of June 28, 2019. AR 79.

## V.   Issues Presented

Plaintiff asserts one claim of error: the ALJ improperly discounted the opinion of the consultative examiner, Emmanuel Fabella, M.D.

### A.   Dr. Fabella's Opinion

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most you can still do despite your limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The RFC need not mirror a particular opinion; it is an assessment

formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, stating as follows:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

### 2. **Analysis**

Dr. Fabella conducted a consultative examination on March 10, 2020 at the request of the agency.  AR 393–98.  Plaintiff reported moderate low back pain 3-4 times weekly, sometimes radiating to the left shoulder and exacerbated by activities such as stooping and mopping; daily pain on the ulnar aspect of both hands/forearms and the lateral aspects of the dorsal feet.  AR 393. Hand dynamometer read 5 pounds of grip strength bilaterally.  AR 395.  Musculoskeletal exam

noted: no spinal or paraspinal tenderness of the low back; negative straight leg raise; good range of motion with forward flexion of 95 degrees achieved; range of motion grossly within normal limits of all bilateral joints including shoulders, elbows, wrists, hands, hips, knees, ankles; and hand examination unremarkable. AR 396. Neurological examination noted: normal muscle bulk and tone without atrophy; "grip strength was apparently with submaximal effort. Otherwise strength is 5/5 throughout without focal motor deficits;" intact sensation; 1+ deep tendon reflexes symmetrical throughout. AR 396.

Dr. Fabella assessed obesity and "low back pain with no significant findings on physical examination and excellent range of motion." AR 397. Dr. Fabella opined she could lift/carry 20 pounds occasionally and 10 frequently "due to low back pain"; occasionally postural activities "secondary to low back pain;" occasional activities requiring agility "secondary to low back pain;" no hand use impairment or fine finger manipulation impairment; and no extreme cold. AR 397.

The ALJ rejected the opinion, explaining as follows:

> The undersigned finds this opinion to be unpersuasive because it inconsistent with the examiner's findings of no spinal or paraspinal tenderness, negative straight leg raising, and good range of motion noted upon physical examination (Exh. 6F). The findings of mild osseous lumbar spinal degenerative change with no fracture or malalignment noted upon objective testing of the lumbar spine support hat the claimant would not be quite so limited with regard to her ability to lift, carry, climb (ramps and stairs), balance, kneel and crawl (Exh. 5F/19). The undersigned also finds this opinion to be unpersuasive with regard to the lack of hand use impairment and fine fingering manipulation impairment because it is inconsistent with the claimant's documented carpal tunnel syndrome and reported pain over the ulnar aspect of both hands and forearms (Exh. 6F). The findings of bilateral first carpometacarpal osteoarthritis osteoarthropathy and tenderness at the right lateral epicondyles, at the right interphalangeal joint and at the first carpometacarpal joint support that the claimant would be limited with regard to the performance of manipulative activities (Exh. 5F/8-9, 20).

AR 75.

Plaintiff argues the ALJ's explanation was legally insufficient overall in that it was insufficiently grounded in the required regulatory considerations of supportability and consistency,

and more specifically that: 1) the ALJ cherry picked the record by citing and relying exclusive on one x-ray of the lumbar spine showing findings of mild osseous lumbar spinal degenerative change with no fracture or malalignment; 2) the ALJ overlooked the importance of other findings suggestive of significant limitation from Dr. Verma's progress notes which documented, a) complaints of tingling and numbness of hands and legs, b) examination findings of positive Tinel's on the right, c) diagnoses of carpal tunnel syndrome and hereditary idiopathic neuropathy, d) prescription for Neurontin and wrist brace, e) follow up noting pain was nonresponsive to medication, f) positive nerve conduction study indicative of moderate median nerve irritation, g) x-ray findings indicative of bilateral carpometacarpal osteoarthritis; 3) the ALJ made internally inconsistent findings insofar as the ALJ found Dr. Fabella's opinion insufficiently restrictive in its lack of accommodation for Plaintiff's hand and wrist impairments yet the ALJ assessed an RFC at a greater exertional level (medium work) than Dr. Fabella assessed (light work); 4) the ALJ failed to consider that Dr. Fabella's opinion was consistent with the treating source opinion of Dr. Verma as to Plaintiff's maximum standing and walking duration of 15 consecutive minutes, 2 hours per day, and unscheduled breaks every 2 hours due to muscle weakness, chronic fatigue, pain, paresthesia, and numbness; 5) the ALJ substituted her own layperson opinion for that of a medical expert; and, 6) the error was harmful because the ALJ found Plaintiff could not perform her past relevant work at step four and had the ALJ adopted Dr. Fabella's opinion as to light exertional work, the Medical-Vocational Guidelines (the grids) would have mandated a finding of disability at step five at the light exertional level given Plaintiff's vocational profile (advanced age, work experience, and education).  Br. 16–18, Doc. 17 (citing AR 71–72, 75, 389, 409–14, 418).

Defendant responds generally that the ALJ's discussion of Dr. Fabella's opinion was sufficiently grounded in the required regulatory considerations of supportability and consistency. Specifically, Defendant contends that: 1) the ALJ appropriately found Dr. Fabella's opinion as to

light exertional work was inconsistent with his unremarkable examination findings with respect to Plaintiff's low back; 2) that earlier in the decision, the ALJ discussed other pertinent objective examination and x-ray findings described by the radiologist as mild and described by Dr. Verma as unremarkable; 3) the ALJ separately articulated reasoning for rejecting the treating source opinion of Dr. Verma, reasoning which Plaintiff does not confront; and 4) the ALJ made no inconsistent findings in concluding that Dr. Fabella's assessment of light exertional work was overly restrictive but that his assessment of no manipulative limitations was under-restrictive. Resp. at 8–11, Doc. 18 (citing AR 72-76, 373-74, 387, 393, 396-97).

As to Plaintiff's cherry picking allegation, the ALJ's rejection of Dr. Fabella's opinion concerning light exertional work was not predicated "solely on a single medical record—'[t]he findings of mild osseous lumbar spinal degenerative change with no fracture of malalignment...'" Br. at 16 (citing AR 75). Nor is Plaintiff correct that "[t]he ALJ cited to no other evidence of record to discount the examiner's finding limiting Plaintiff to light exertional work." *Id.* In the sentence immediately preceding the one Plaintiff quotes regarding mild osseous lumbar changes, the ALJ stated "The undersigned finds this opinion to be unpersuasive because it inconsistent with the examiner's findings of no spinal or paraspinal tenderness, negative straight leg raising, and good range of motion noted upon physical examination (Exh. 6F)." AR 75.

Dr. Fabella's examination findings were indeed as the ALJ described them. They were unremarkable, including no tenderness, negative straight leg raise bilaterally (a provocation test for sciatic nerve root tension), and good range of motion. AR 396. Plaintiff does not contend otherwise or cite countervailing evidence demonstrating abnormalities related to Plaintiff's lumbar spine. Those unremarkable examination findings, as well as the mild degenerative changes on x-ray, undermined Dr. Fabella's opinion that she was limited to light exertional work. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

8

conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002).

Further, the exertional limitations Dr. Fabella assessed (lift carry, sit, stand, walk) were stated as secondary to "low back pain," not objective examination findings. AR 397. The presence of pain can be objectively verified to some extent such as tenderness to palpation, pain response to the straight leg raise test, or restricted range of motion-- none of which Plaintiff exhibited. Thus, the only low back pain Dr. Fabella could have been referencing as the basis for exertional limitations was Plaintiff's subjective pain as she reported it to Dr. Fabella.

Even crediting those subjective statements as true does not strongly support a limitation to light exertional work. Plaintiff did not report severe or persistent low back pain to Dr. Fabella, or that the pain was provoked by lifting, carrying, standing, or walking. Rather Plaintiff reported intermittent pain of moderate intensity that came on 3-4 times per week and was exacerbated by activities such as stooping and mopping. AR 393. Those subjective statements do not strongly support a restriction to light exertional work, nor are they inconsistent with the ALJ's finding that she could perform a reduced range of medium exertional work with a restriction on postural activities such as stooping (one of the triggering activities Plaintiff identified) which the ALJ reduced from unlimited to frequent (no more than 2/3 of an 8-hour day, SSR 83-10).

Plaintiff also suggests the ALJ focused on the lumbar spine x-ray at the expense of records concerning her hand impairments, records which Plaintiff contends support Dr. Fabella's assessment of light exertional work. Earlier in the decision the ALJ did discuss in detail the records Plaintiff emphasizes concerning her carpal tunnel syndrome and hand osteoarthritis diagnoses, her prescriptions for Neurontin and wrist braces, nerve conduction testing and imaging of her hand joints. AR 73. The ALJ referenced them again in addressing Dr. Fabella's opinion that Plaintiff had no manipulative limitations:

> The undersigned also finds this opinion to be unpersuasive with regard to the lack of hand use impairment and fine fingering manipulation impairment because it is inconsistent with the claimant's documented carpal tunnel syndrome and reported pain over the ulnar aspect of both hands and forearms (Exh. 6F). The findings of bilateral first carpometacarpal osteoarthritis osteoarthropathy and tenderness at the right lateral epicondyles, at the right interphalangeal joint and at the first carpometacarpal joint support that the claimant would be limited with regard to the performance of manipulative activities (Exh. 5F/8-9, 20).

AR 75.

Plaintiff contends that the hand impairments equally support a restriction to light work, but does not explain how that is so. Br. at 16. Defendant, on the other hand, suggests that the only evidence relevant to Plaintiff's exertional capacity was evidence related to her back pain, not her hand impairments. Resp. at 7. Defendant likewise does not explain how that is so. Although hand impairments such as carpal tunnel syndrome and arthritis are most often discussed in the context of manipulative limitations (as the ALJ discussed them here), there is at least one respect in which hand impairments are relevant to exertional capacity, namely lifting and carrying. Before one engages the lumbar spine, one must first grasp the object with one's hands (and grasp it pretty firmly if it weighs 50 pounds as required by medium exertional work). Carpal tunnel syndrome and hand arthritis would almost certainly make that task more difficult.

Plaintiff did not make this argument in so many words, however. Further, despite Plaintiff's diagnoses of carpal tunnel syndrome and osteoarthritis, Dr. Fabella nevertheless noted normal range of motion in Plaintiff's wrists; normal joint flexion in her hands; grip strength was 5 pounds bilaterally as measured by the hand dynamometer (AR 395)—however, Dr. Fabella noted it "was apparently with submaximal effort"; and motor strength was otherwise 5/5. AR 396. With no functional deficiency noted upon objective examination of Plaintiff's wrists or hands such as deficient range of motion or grip strength (which would require maximum effort to be an accurate metric in any case), the diagnosis of carpal tunnel, osteoarthritis, and reported pain symptoms do not strongly support a reduction to light exertional work.

Further, Dr. Fabella opined Plaintiff had no hand use impairment and no fine fingering manipulation impairment. AR 396–97. Thus, Plaintiff's argument that her hand impairments supported the light exertional capacity assessed by Dr. Fabella (including lift/carry 10 to 20 pounds maximum) is not persuasive. Dr. Fabella himself did not so opine. He attributed the lifting and carrying restrictions to low back pain as addressed above.

Plaintiff contends the ALJ's decision was internally inconsistent in that the ALJ found Dr. Fabella's opinion insufficiently restrictive in one respect in its failure to assess manipulative limitations commensurate with carpal tunnel and hand arthritis, but the ALJ nevertheless assessed an RFC at an overall even higher exertional level (medium work rather than light). It is not inconsistent for an ALJ to find an opinion insufficiently restrictive in some respects yet excessively restrictive in others. The RFC need not mirror any particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 401545(a)(3). This same principle refutes Plaintiff's suggestion that the ALJ played doctor in formulating her own layperson RFC over that of a medical expert.

Finally, Plaintiff contends the ALJ erred in failing to recognize that Dr. Fabella's opinion was consistent with the treating source opinion of Dr. Verma as to Plaintiff's maximum standing and walking duration of 15 consecutive minutes, 2 hours per day, and unscheduled breaks every 2 hours due to muscle weakness, chronic fatigue, pain, paresthesia, and numbness. Indeed, per the regulations, when evaluating the consistency factor the Commissioner will consider how consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim" which would include other medical opinions. 20 C.F.R. § 404.1520c(c)(2). The opinions of Drs. Fabella and Verma were consistent in the respects Plaintiff emphasizes, which the ALJ did not overtly take note of. The ALJ did, however, accurately recite the content of both and rejected both for the same valid reasons, namely lack of supportive examination or diagnostic findings

commensurate with the identified limitations.  AR 74, 76.

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Lilia Haller.

IT IS SO ORDERED.

Dated:  **October 22, 2023**                    **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE